DOUGLAS E. GEYMAN   SBN: 159417
Law Office of Douglas E. Geyman
750 B Street, Suite 2635
San Diego, CA 92101
Telephone: (619) 232-3533
Facsimile: (619) 232-3593

FILED

2009 SEP -1  PM 2: 43

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

Attorney for Plaintiff,
Willie J. Roberts

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE J. ROBERTS, an Individual<br><br>Plaintiff,<br><br>v.<br><br>TOM VILSACK, SECRETARY, UNITED STATE DEPARTMENT OF AGRICULTURE; and<br>DOES 1 through 50, Inclusive.<br><br>Defendants. | Civil No: 09 CV 1911 BEN WMc<br><br>**COMPLAINT FOR:**<br><br>UNLAWFUL EMPLOYMENT DISCRIMINATION BASED ON RACE (42 USC §2000e-2, *et seq.*)<br><br>**JURY TRIAL DEMANDED** |

Plaintiff WILLIE J. ROBERTS ("Roberts" or "Plaintiff"), for his complaint alleges as follows:

1.  Plaintiff brings this action pursuant to the provisions of 42 U.S.C. §2000e-2, *et seq.* ("The Civil Rights Act") to obtain such legal and equitable relief as will effectuate the purposes of the aforementioned statute.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §1331.

3.  Venue in the United States District Court for the Southern District of California is proper under 28 U.S.C. §1391(b).

### THE PARTIES

4.  Plaintiff WILLIE J. ROBERTS ("Plaintiff or "Roberts") is an individual residing in the State of California, County of San Diego.

5.     Plaintiff is informed and believes and thereon alleges that Defendant United States Department of Agriculture ("Defendant" or "the USDA") is, and at all times relevant herein was, a public entity established by the Executive Branch of the United States Government.

## PROCEDURAL AND FACTUAL BACKGROUND

6.     Plaintiff is a member of the protected class of race under 42 USC §2000e-2, *et seq.* ("the Civil Rights Act").

7.     On June 30, 2002 Plaintiff became employed with the USDA. At all times relevant herein relevant, Plaintiff's position title was Senior Investigator, GS-1810-12.

8.     Plaintiff racial heritage is African-American.

9.     At all times mentioned herein, Plaintiff's first-line supervisor since June 12, 2005 was Karen L. Kraubner-Lucas ("Kraubner-Lucas") Caucasian, Pacific Area Manger, GS-1810-13. Plaintiff's second-line supervisor was Eric Nickerson ("Nickerson") Caucasian, Deputy Regional Director, GS-14.

10.     On or about June 18, 2007 during a telephone conversation with Kraubner-Lucas, Plaintiff mentioned the need for an investigator to handle cases at Calexico, Andrade Ports of Entry and the Imperial County. Plaintiff provided Kraubner-Lucas with contact information for both Customs and Border Protection (CBP) Port Directors during their conversation.

11.     On or about June 26, 2007, Plaintiff received an email from Kraubner-Lucas wherein she directed Plaintiff to contact her each time he received a new case from any CBP Port of Entry or USDA Plant Protection and Quarantine (PPQ) and request permission to conduct site visits with PPQ.

12.     Plaintiff was also advised by Kraubner-Lucas in the same email that Investigator Robin Nevarez ("Nevarez") from the Los Angeles Office would handle case investigations in the Imperial County. Plaintiff would then be required to send any future communications from both areas to Investigator Nevarez and a copy of the communication to Kraubner-Lucas.

13.     In addition, Investigator Rhonda Smith ("Smith") from the Los Angeles office, with an office in Temecula, would attend CBP Pest Risk Committee meetings with Plaintiff and Kraubner-Lucas would determine in the future attendance of these meetings at a later date. On or about December 2008 Kraubner-Lucas authorized Plaintiff to attend Pest Risk Committee meetings only.

14. On or about November 30, 2007, Plaintiff received a telephone call from Kraubner-Lucas asking Plaintiff to meet with her at the USDA Plant Inspection Station in Hawthorne, California on December 6, 2007. Kraubner-Lucas asked Plaintiff to bring all of the documents relating to case CA07125-AC with him on December 6, 2007.

15. On or about December 6, 2007, Plaintiff met with Kraubner-Lucas and briefed her on the status of the investigation pertaining to case CA07125-AC. After Plaintiff's presentation, Kraubner-Lucas served Plaintiff with a written proposal for his suspension from Investigative and Enforcement Service. In the written proposal for Plaintiff's suspension from IES Kraubner-Lucas claimed that Plaintiff failed to make weekly telephone contact with her; that Plaintiff had made an inappropriate remark to a member of the public; and that Plaintiff had failed to prepare two case reports in the proper format.

16. Plaintiff believes that the inappropriate remark Kraubner-Lucas referred to during their meeting on December 6, 2007 involved a previous interview with an Animal Exhibitor. Plaintiff had made repeated attempts to obtain facility and animal treatment records from the Animal Exhibitor with no success. However, during Plaintiff's interview with the Animal Exhibitor, the woman was cooperative and responsive to Plaintiff's questions, although the woman was evasive at times. At the end of the interview Plaintiff thanked the woman for being cooperative and stated that he was under the impression that this was going to be a hostile interview.

17. Immediately after Plaintiff made the comment to the Animal Exhibitor Plaintiff realized that he should not have made the comment. It was Plaintiff's intent to compliment the woman, not insult her. The individual however did not appear to be angry about Plaintiff's comment, just curious as to why Plaintiff thought it was going to be a difficult interview.

18. Plaintiff was unaware that the woman had filed a formal complaint about his comment as Plaintiff's supervisor, Kraubner-Lucas, had never mentioned a formal complaint having been made to Plaintiff. During Plaintiff's meeting with Kraubner-Lucas on December 6, 2007 Kraubner-Lucas stated to Plaintiff that he had made an inappropriate statement and "it had the potential to adversely affect future visits" by Animal Care and APHIS employees. Kraubner-Lucas further stated that the comment could be a detriment to the working relationship between IES and USDA Animal Care.

19. Plaintiff did not believe that his comment would have a negative impact on the working

relationship between IES and Animal Care and that Kraubner-Lucas statements and actions that day were conducted with the intention of harassing Plaintiff based on his race.

20. Plaintiff was fully aware of another employee who had not been disciplined for making inappropriate comments in public without personnel action, specifically Investigator Rhonda Smith ("Smith") a Caucasian female.

21. Plaintiff recalls an event which took place on or about January 23, 2008, during a group lunch on a cattle ranch near Fresno, California. Smith had ordered a plate of Rocky Mountain Oysters. Plaintiff felt Smith's discussion about the cow testicles was inappropriate, however both Kraubner-Lucas and Fordahl who were both present at the lunch table, said nothing. No personnel action was ever taken against Smith.

22. Plaintiff recalls another occasion wherein Smith again made inappropriate comments. In or about February 2008 Plaintiff was participating in a Market Inspection Blitz in San Diego with Smith. During the operation, Plaintiff was informed by California Department of Food & Agriculture Biologist James Lawrence ("Lawrence") and USDA Plant Protection and Quarantine Officer Adela Vera ("Vera") that Investigator Smith had made inappropriate comments about Plaintiff.

23. Plaintiff admits that he may have missed calling his Supervisor, Kraubner-Lucas, possibly three times over a period of an entire year at the most. In addition to Plaintiff making weekly phone calls to Kraubner-Lucas, Plaintiff maintained weekly communication with her via email.

24. Plaintiff is fully aware of other Investigators, non-African-American, who were not required to call Kraubner-Lucas on a weekly basis. Plaintiff believes and therefore alleges that Kraubner-Lucas's allegation of non-communication was intentional with the sole purpose of harassing Plaintiff and discriminating against him based on his race, African-American.

25. Plaintiff was advised by Kraubner-Lucas that primary investigations had to be completed in 65 - 100 days when few investigators completed case reports within this time requirement. Plaintiff was aware of other Investigators, non-African-American, that had cases over 200 days old.

26. On or about September 27, 2007 Plaintiff was instructed to prepare two case reports by Kraubner-Lucas, however Plaintiff does not recall receiving specific instructions on this day from Kraubner-Lucas to prepare the case reports in the new IES case format.

27. Plaintiff did receive approximately four hours of training on the new case report format by Kraubner-Lucas on or about September 27th, 2007, while Plaintiff's fellow co-workers, majority of which were non-African-American, received two days of training on the new case report format on September 13th & 14th, 2007.

28. After Plaintiff received the proposed suspension from Kraubner-Lucas on December 6, 2007, Kraubner-Lucas advised Plaintiff that he could submit a written reply to the charges to the deciding official, Regional Director Timothy R. Fordahl ("Fordahl") Caucasian via Human Resources Specialist Rene E. Wing ("Wing") Caucasian, when Plaintiff's second in line Supervisor, Nickerson, should have been the deciding official.

29. On or about December 16, 2007, Plaintiff sent a letter to IES Western Regional Director Timothy R. Fordahl contesting the charges of improper conduct. Plaintiff also sent a copy of the letter to Wing and scheduled a conference call with Fordahl on January 14, 2008 to discuss the proposed suspension.

30. On or about June 26, 2007 Plaintiff was instructed by Kraubner-Lucas not to attend meetings or participate in Program activities (CBP, PPQ, and Veterinary Services) at the ports of entry in San Diego. This action adversely affected Plaintiff's working relationship with State, County and other Federal Agencies.

31. Plaintiff was aware of other similarly situated employees, Caucasian, who could freely interact with the Department of Homeland Security, Customs and Border Protection (CBP) and USDA Plant Protection and Quarantine, and other California and Federal agencies at meetings, training sessions, and special operations.

32. Plaintiff believes and thereon alleges that Kraubner-Lucas was giving Plaintiff cases in Los Angeles in an attempt to keep him away from his duties in San Diego. Kraubner-Lucas and Smith's actions have impaired Plaintiff's abilities to conduct investigations and maintain liaisons with IES customers in San Diego and the Imperial County; undermined Plaintiff's professional standing with his customers; and caused Plaintiff emotional stress.

33. Plaintiff is aware of other similarly situated Investigators, Caucasian, who were given more freedom and latitude to perform investigative duties, participate in Program operations, and conduct and attend training.

34.   On or about January 14, 2008, Plaintiff received a telephone call from Fordahl regarding the proposed suspension. In addition to discussing the proposed suspension, Plaintiff advised Fordahl that Kraubner-Lucas had instructed him not to attend or participate in Program activities at the Ports of Entry. Fordahl replied stating, "that is another matter."

35.   On or about February 7, 2008, Plaintiff sent CBP Agriculture Supervisor Hector Baez ("Baez") a list of local IES Points of Contacts, in the event of an agriculture pest outbreak at the United States/Mexico Border in San Diego. Plaintiff listed himself as the primary contact, and Kraubner-Lucas and Investigator Smith as alternatives.

36.   Plaintiff later discovered that Investigator Smith had submitted a contact list to Supervisor Baez listing Kraubner-Lucas, Fordahl and herself as primary contacts, not Plaintiff.

37.   On or about February 11, 2008, Plaintiff received an email from CBP Agriculture Supervisor Baez concerning his conversation with Kraubner-Lucas. Kraubner-Lucas told Baez that Investigator Smith was the primary IES point of contact in San Diego, however Kraubner-Lucas failed to inform Plaintiff of this.

38.   On or about March 1, 2008, Plaintiff completed the required case investigations and training for advancement to Journeyman level GS-12.

39.   On or about March 25, 2008, Plaintiff received an email from Wing with an attached Alternative Discipline Agreement from Fordahl. Under the terms of the Agreement, Plaintiff was required to admit to the charges of improper conduct, donate 40 hours of annual leave, agree to a supervisory referral to counseling, and accept a 2-day suspension, among other stipulations. Plaintiff declined the Alternative Discipline Agreement.

40.   On or about March 27, 2008 Plaintiff received a telephone call from PPQ Officer Vera wherein she advised Plaintiff that Investigator Smith had met with her Supervisor, Rey L. Mosqueda. After the meeting, Vera was instructed not to contact Plaintiff about any San Diego SITC investigation requests.

41.   Later that same day, PPQ Officer Vera informed Plaintiff that Kraubner-Lucas notified her Area Manager, Steven Spalla that Investigator Smith was the first line IES contact in San Diego. Again, Kraubner-Lucas did not inform Plaintiff about this decision.

42.   On or about April 14, 2008, Plaintiff contacted Wing via email and asked her whether or not IES

1  Director Robert J. Huttenlocker ("Huttenlocker") was aware of the proposed disciplinary action to be
2  taken against him.
3  43.     That same day Plaintiff received an email from PPQ Supervisor Robert Smith wanting to know
4  who was the IES contact for San Diego, Investigator Smith or Plaintiff. PPQ Supervisor Robert Smith
5  went on in the email to state that Plaintiff would continue to be his contact until he received information
6  otherwise from his Supervisor.
7  44.     On or about April 29, 2008, Plaintiff received an email from Wing in response to Plaintiff's
8  inquiry as to whether or not IES Director Huttenlocker was aware of the proposed disciplinary action
9  to be taken against him. Wing responded by stating in her email, "it is not appropriate to elevate this
10 beyond the deciding official at this stage of the issue."
11 45.     On or about May 30, 2008, Plaintiff received a Decision Letter from Fordahl wherein he stated
12 that the charge and specifications, as stated in the Notice dated December 3, 2007, were fully supported
13 by the evidence of record and warranted the proposed suspension of Plaintiff. Fordahl however failed
14 to state what evidence that he had in his possession against Plaintiff.
15 46.     On or about May 31, 2008, Plaintiff sent a second copy of his Career Development/Competency
16 Chart to Kraubner-Lucas for her review and consideration for Plaintiff's promotion to GS-12.
17 47.     On June 1st through June 14th, 2008, Plaintiff was suspended from IES.
18 48.     On June 16, 2008, Plaintiff received an email from Kraubner-Lucas confirming that Plaintiff had
19 completed the requirements for promotion to GS-12, however she did not feel that Plaintiff could
20 perform the work of a Senior Investigator at that time. Kraubner-Lucas further stated that she would
21 review and determine Plaintiff's eligibility for GS-12 when he had completed eight open case
22 investigations.
23 49.     During the week of August 11th through 15th, 2008, Plaintiff was excluded from training provided
24 to Plant Protection & Quarantine, Smuggling Interdiction and Trade Compliance (SITC) Officers station
25 at the ports of San Diego, Calexico, Nogales, and Phoenix. The training was conducted by Kraubner-
26 Lucas and Investigator Smith.
27 50.     On or about August 15, 2008, Plaintiff received an email from Kraubner-Lucas concerning
28 five new international mail cases she had previously sent to him. Kraubner-Lucas stated that if Plaintiff

completed the cases within the Performance Standard time frame (100 days) she would proceed with the processing of his GS-12 paperwork.

51. Plaintiff was aware of other similarly situated Investigators, most of whom were Caucasian, who were promoted to GS-12 after completion of all the Career Development Competencies. Plaintiff did not discuss the promotion issue with management because he assumed management would agree with Kraubner-Lucas's actions.

52. On or about August 19, 2008, Plaintiff was excluded from training to CBP Agriculture Specialists and Supervisors stationed at the Port of San Ysidro and Otay Mesa. The training was conducted by Kraubner-Lucas and Investigator Smith.

53. On or about November 23, 2008, Plaintiff was promoted to GS-12.

54. Plaintiff believes and thereon alleges that his race, African-American, played a critical role in his pass over for promotion in March 2008 as Kraubner-Lucas recommended Caucasian, African-American (female), Hispanic and Asian investigators for promotion.

55. Plaintiff had been rated fully successful for all critical performance elements in his performance evaluations for FY 2007 and FY 2008. The quality of his case reports were rated superior. Kraubner-Lucas was responsible for rating Plaintiff's performance both for FY 2007 and FY 2008.

56. During Plaintiff's performance evaluations, Kraubner-Lucas did not discuss any deficiencies with Plaintiff's performance. Instead, Plaintiff received a Letter of Reprimand during a meeting with Kraubner-Lucas on or about June 29, 2007 wherein she alleged that Plaintiff failed to meet case completion deadlines and call her weekly. Plaintiff had received no advance written or oral notice of the Letter of Reprimand.

57. In or about January 2009, Plaintiff was excluded from an Animal Care Investigation in San Diego. The investigation was conducted by Senior Investigators Phil Ledbetter, Caucasian, from San Francisco; Thomas Jones, Caucasian, from Los Angeles; Soroya Waite, African-American (female), from Missouri, and Robin Nevarez, Hispanic.

58. Plaintiff is informed and believes, and thereon alleges, that similarly situated employees, all of whom were of racial heritages other than African-American male, were not harassed in their employment with the USDA IES Western Region, and were given preferential treatment based on their race.

59. Plaintiff believes and thereon alleges that Defendants knew, or should have known, and allowed to continue and exist daily a harassing and discriminatory work environment based on Plaintiff's race.

60. The Civil Rights Act expressly prohibits discriminated based on race, among other things. Plaintiff believes and thereon alleges that the USDA considered his race and discriminated against him based thereon.

61. On or about October 27, 2008 Plaintiff filed a formal complaint for discrimination with the USDA, APHIS, Civil Rights Employment Complaints Division against USDA based on his race. Case No. APHIS-2008-00778 ("The Discrimination Complaint").

62. On or about June 3, 2009, USDA Office of Adjudication and Compliance issued its Final Agency Decision, and granted Plaintiff the right to bring suit in the United States District Court, who timely files this action.

## COUNT 1

### Unlawful Employment Discrimination Based on Race

### (42 USC §2000e-2, *et seq.*)

63. Plaintiff incorporates herein by reference paragraphs 1 through 62, of this complaint as though fully set forth herein.

64. Plaintiff was subjected to continuous discrimination in the workplace based on his race, including, but not limited to denial of attendance and participation in Program activities at the ports of entry; denial of promotion to Senior Investigator GS-12 in March 2008; 14 days suspension from IES in June 2008; and daily harassment and discrimination by his Supervisor, Karen L. Kraubner-Lucas.

65. Race is a protected class under 42 USC §2000e-2, *et. seq.*

66. Plaintiff's claims of employment discrimination based on race are supported by the acts alleged herein.

67. As a result of Defendants discriminatory actions, Plaintiff has suffered economic and other losses, including, but not limited to, lost earnings, loss of leave time and other employment benefits, and damages for emotional distress, humiliation and mental anguish, in an amount not less than $_____ _____ in compensatory damages.

///

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for relief as follows:

1. For expunction from Agency's records of any adverse material relating to the suspension;
2. For continued IES assignment in San Diego, CA under a new supervisor;
3. For compensatory damages, including, but not limited to lost earnings, lost leave, lost benefits, damages for emotional distress, humiliation and mental anguish all in an amount not less than $100,000.
4. For back pay retroactive to March 2008 when Plaintiff was passed over for promotion;
5. For reasonable attorneys fees;
6. For costs of suits;
7. For such other and further relief as the Court may deem appropriate.

Dated: 9\1\09

LAW OFFICE OF DOUGLAS E. GEYMAN

By: _____
Douglas E. Geyman, Esq.
Attorney for Plaintiff, WILLIE J. ROBERTS

## DEMAND FOR JURY TRIAL

Plaintiff, Willie J. Roberts, hereby demands a trial by jury on all claims.

Dated: 9/1/09

LAW OFFICE OF DOUGLAS E. GEYMAN

By: _____
Douglas E. Geyman, Esq.
Attorney for Plaintiff, WILLIE J. ROBERTS

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
WILLIE J. ROBERTS, an individual

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Douglas E. Geyman, Esq., 750 B Street, Suite 2635, San Diego, CA 92101

## DEFENDANTS
TOM VILSACK, SECRETARY UNITED STATES DEPARTMENT OF AGRICULTURE and DOES 1-50,

County of Residence of First Listed Defendant **San Diego**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**'09 CV 1911 BEN WMc**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §2000e-2, et.seq.
Brief description of cause:
Civil Rights Act - Discrimination based on race.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 09/01/2009
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 4768   AMOUNT 350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS004768
Cashier ID: sramirez
Transaction Date: 09/01/2009
Payer Name: KNOX ATTY SVCS
-----------------------------------
CIVIL FILING FEE
 For: ROBERTS V. VILSACK
 Case/Party: D-CAS-3-09-CV-001911-001
 Amount:       $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 8699
 Amt Tendered: $350.00
-----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```